UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                              )<br>)<br>ROBERT GRAMOLINI                 )<br>_____ ) | No. 21-cr-31-JD |

GOVERNMENT'S OBJECTION TO
DEFENDANT'S MOTION TO REVOKE DETENTION ORDER

The United States of America objects to the defendant's motion to revoke Judge Johnstone's order to detain the defendant pending trial. Judge Johnstone correctly found that this case involves a serious risk of flight and that no condition or combination of conditions will reasonably assure the defendant's appearance. The Court should therefore deny the defendant's motion to revoke the Judge Johnstone's detention order.

I.     Background

Section 3142(f) of the Bail Reform Act, 18 U.S.C. §§ 3141-3156 (the "Act"), requires the judicial officer to "hold a hearing to determine whether any condition or combination of conditions . . . will reasonably assure the appearance of such person as required and the safety of any other person and the community" either upon a motion of the government under § 3142 (f)(1) or "upon motion of the attorney for the Government or upon the judicial officer's own motion" under § 3142 (f)(2). Thus, the Act "limits [detention] hearings" to the circumstances listed in 18 U.S.C. §§ 3142 (f)(1) and (f)(2). *United States v. Ploof*, 851 F.2d 7, 10 (1st Cir. 1988).

In this case, the government moved for a detention hearing under 18 U.S.C. § 3142 (f)(2)(A), which allows for such a motion in a case "that involves" a "serious risk that [the defendant] will flee." 18 U.S.C. § 3142 (f)(2)(A). "'[O]nce there is a basis to hold a detention

1

hearing,' the court is required to consider if any conditions of release would reasonably assure the safety of the community and the appearance of the defendant pursuant to 18 U.S.C. § 3142(g)." *United States v. Salgado*, 2020 WL 4747931, at *4 (D.R.I. Aug. 17, 2020) (quoting *United States v. Castellanos-Almendares*, 2019 WL 3937862, at *2-3 (S.D. Fla. Aug. 20, 2019)).

Prior to the detention hearing, the defendant filed a motion asking the Court to require the government to make a threshold showing that this case involved a serious flight risk before conducting a detention hearing. ECF No. 6. In response, the government argued that the Bail Reform Act does not require it to make a threshold showing of flight risk but that it was prepared to make such a showing. Tr. at 7. The government also explained that its proffer and arguments concerning serious flight risk and detention would largely overlap. Tr. at 7, 10.

Judge Johnstone explained that because the arguments and evidence "on the threshold issue of a serious risk of flight and the 3142 (g) factors in [the government's] arguments for detention on risk of flight and dangerousness [are] basically all the same presentation" she would allow the parties to argue and proffer evidence regarding both issues before making her findings. Tr. at 10-11. The defendant objected. *Id.* at 11.

After counsel made their proffers and arguments, Judge Johnstone did what the defendant said she should do: she first made a threshold finding that "this case presents a serious risk of flight" and thus a detention hearing is warranted under the Act. Tr. at 29-30. She then found that the government had established by a preponderance of the evidence that no conditions or combination of conditions would reasonably assure the defendant's appearance. Tr. at 30-37.

After the hearing, Judge Johnstone entered a docket order denying the defendant's motion requiring the government to make a threshold showing of flight risk, explaining:

> The government moved for detention in this case in accordance with
> 3122(f)(2)(a). The court permitted the government to combine its arguments on

2

the serious risk of flight and other basis for detention rather than requiring the government to make a threshold showing prior to the conduct of a detention hearing. The court made findings on the record with regard to serious risk of flight and the reasons for detention. Accordingly, the motion (6) is denied.

On April 6, 2021, the defendant filed a motion for review and revocation of Judge Johnstone's detention order.  ECF No. 13.  "Under 18 U.S.C. § 3145(b), the court conducts a de novo review of the record to decide whether to maintain detention or release a defendant." *United States v. Merrick*, 2020 WL 4483128, at *1 (D.N.H. Aug. 4, 2020) (citing *United States v. Tortora*, 922 F.2d 880, 883 n.4 (1st Cir. 1990)).

> II.   Judge Johnstone Did Not Commit A Procedural Error.

The defendant complains that Judge Johnstone committed a procedural error by "not requiring the government first to establish that this case 'involves . . . a serious risk that [Mr. Gramolini] will flee' before conducting a detention hearing." ECF No. 13 at 1.  In support, the defendant cites *United States v. Ploof*, where the First Circuit held that the Act does not "authorize preventive detention unless the judicial officer first finds that one of the § 3142(f) conditions for holding a detention hearing exists."  851 F.2d 7, 11 (1st Cir. 1988); ECF No. 13 at 4.

But, in *Ploof*, the district court's error was that it did not "expressly find" that one of the § 3142(f) conditions for holding a detention hearing exists so the circuit remanded, ordering "further findings made indicating whether or not there is a serious risk defendant will engage or attempt to engage in the conduct set forth in § 3142(f)(2)(B) . . . ." *Id.* at 12.  Here, as discussed, Judge Johnstone *did* require the government to establish that this case involves a serious flight risk under § 3142(f)(2)(A).  And she "expressly" found that this was a case involving a serious risk of flight before considering whether any conditions would assure the defendant's appearance under § 3142(g).  She did precisely what the First Circuit requires.

3

The defendant puts form over substance and would require the Court to go through a mechanical exercise of conducting two hearings with arguments and evidence that almost entirely overlap. The Bail Reform Act requires no such thing. The Act does not set out any procedures (much less require an evidentiary hearing) for the judicial officer to determine if the case involves a serious flight risk. To the contrary, the Act gives the judicial officer broad discretion to hold a detention hearing in cases involving flight risk, requiring a detention hearing "upon the motion of the attorney for the Government *or upon the judicial officer's own motion*." § 3142(f)(2) (emphasis added).[1]

Here, Judge Johnstone properly exercised that discretion. She required the government to make a showing to support its motion for a detention hearing based on a serious flight risk. For judicial economy, she allowed the parties to combine their arguments and proffers concerning flight and detention and then separately found that (i) the case involved a serious risk of flight, allowing a detention hearing; and (ii) no combination of conditions would assure the defendant's appearance and he should therefore be detained. This makes sense. The text of the Act requires the Court at a detention hearing to determine whether any condition (or combination of conditions) "will reasonably assure the appearance of the person as required." 18 U.S.C. § 3142(e), (f), (g). That determination will nearly always be conceptually the same as determining whether the case involves a serious risk that such person will flee and will involve presentation of the same evidence and arguments.[2]

---

[1] In contrast, a detention hearing sought under (f)(1) can only be sought "upon motion for an attorney for the Government." § 3142(f)(1).

[2] There may be a case were combining the proffers and arguments would prejudice the defendant. In such a case, the judicial officer may well require the government to make a separate threshold showing that a detention hearing is warranted under the Act. This is not such a case.

After hearing the evidence and arguments, Judge Johnstone did what *Ploof* requires: she "first [found] that one of the § 3142(f) conditions for holding a detention hearing exists" then determined that no condition or combination of conditions would assure the defendant's appearance as required. *Ploof*, 851 F.2d at 10-11. She did not commit a procedural error.[3]

    III.    Judge Johnstone Correctly Concluded That This Case Involves A Serious Flight Risk And That No Condition Or Combination Of Conditions Of Release Will Reasonably Assure The Defendant's Appearance.

Judge Johnstone correctly concluded that this case involves a serious risk that the defendant will flee. In so finding, Judge Johnstone considered the defendant's substantial criminal history, his history of defaults, his active drug use, that the defendant committed the instant offense while on bond, and the defendant's transient housing circumstances. Tr. at 30.

The defendant, apparently referring to the government's proffer concerning crimes the defendant committed while on pre-trial release, asserts that in arguing that this case involves a serious flight risk the government "presented a laundry list of arguments largely unmoored from the statute." ECF No. 13 at 6; *see also* Tr. at 27. The defendant then cites *Ploof* and several other cases for the proposition that a defendant cannot be detained "solely on the ground of dangerousness." ECF No. 13 at 6 (citing cases). This argument fails for three reasons.

First, and most important, "new criminal conduct committed while pretrial or probation conditions were pending" is relevant to risk of flight because it "reinforc[es] the conclusion that [the defendant] has no respect for court-ordered constraints." *Salgado*, 2020 WL 4747931, at *5. Second, as discussed, the Court allowed the government to proffer both as to flight risk and detention under § 3142(g). "[A]t a detention hearing properly sought by the Government under

---

[3] In any event, even if there were a procedural error (and there was not), it was harmless as the Magistrate Judge made the threshold finding that the defendant asked her to make. *Cf. United States v. Tavares*, 705 F.3d 4, 25–26 (1st Cir. 2013) (holding that "a serious procedural error" at sentencing is subject to "harmless-error analysis").

5

the Bail Reform Act on serious risk of flight grounds" the court can consider under § 3142(g) whether "the release of the defendant would constitute a danger to the community or a person in the community." *Id.* (quoting *Castellanos-Almendares*, 2019 WL 3937862, at *3).  Third, and finally, the cases cited by the defendant are irrelevant as the Court did not detain the defendant based on dangerousness (much less "solely" on the basis of dangerousness) but because no condition or combination of conditions would assure his appearance.  *See* Tr. at 31-35.

Judge Johnstone also correctly found that no conditions or combination of conditions would assure the defendant's appearance.  In so finding, Judge Johnstone considered the weight of the evidence against him for the instant offense and the difficulty law enforcement had in reaching the defendant.  She also explained that the defendant's history of defaults was a particular concern.  For example, she explained that, in one case where he defaulted, the defendant "had counsel" and "[i]f he had concerns or questions about where he was supposed to be or what he was supposed to do, he had contacts and resources in terms of individuals who could have helped him to get answers to those questions."  Tr. at 33.

Judge Johnstone also explained that this history of defaults, when combined with the defendant's history of drug use, "raises significant concerns for the Court about his potential failure to appear."  *Id.*  That the defendant allegedly committed other criminal offenses while released on bond "also weigh[ed] in favor of detention as it relates to risk of flight" because it "raise[d] concerns for the Court about Mr. Gramolini's willingness or ability to comply with conditions of release, including conditions to appear at future court proceedings."  *Id.*

Finally, Judge Johnstone considered the defendant's arguments about his ties to Massachusetts and proposal to live with his girlfriend while on release.  Judge Johnstone explained that this did not ameliorate her concerns because (i) "the instability of [the

6

defendant's] housing . . . raises concerns for the Court" and "the FBI had difficulty reaching him and ultimately needed to do it through another individual"; and (ii) the defendant's girlfriend "is not a suitable third-party custodian" because, among other things, she previously took out a restraining order against the defendant and, although her criminal history is somewhat minimal, "she was not transparent and candid about her history" with probation.  *Id.* at 33-34.

Weighing all of this, Judge Johnstone ordered the defendant detained pending trial.  *Id.* at 35; *see also e.g.*, *Salgado*, 2020 WL 4747931, at *4 (case involved serious risk of flight and detention warranted despite defendant's "strong and deep family ties in Rhode Island" where, among other things, defendant had warrants for failure to appear and committed crimes "while pretrial or probation conditions were pending").

IV. Conclusion.

Judge Johnstone correctly found that this case involves a serious risk that the defendant will flee and that no condition or combination of conditions will assure is appearance.  The Court should therefore deny the defendant's motion to revoke Judge Johnstone's detention order.

Respectfully submitted,

JOHN J. FARLEY
Acting United States Attorney

By: /s/ Matthew T. Hunter
Matthew T. Hunter
Assistant U.S. Attorney
Bar No. 682921 (MA)
53 Pleasant Street, 4th Floor
Concord, New Hampshire 03301
(603) 225-1552
Matthew.Hunter@usdoj.gov